■ In the Matter of MICHAEL MONDELLO, Respondent, v AUGUSTINE BEEKMAN, as Fire Commissioner of the City of New York and as Chairman of the Board of Trustees of 1-B Pension Fund of the City of New York, et al., Appellants. — Order and judgment (one paper), Supreme Court, New York County, entered May 19, 1979, remanding petitioner's application for a line of duty disability retirement to respondents for a determination and granting other relief, is reversed, on the law, and the petition is dismissed, without costs. The question whether petitioner is permanently disabled is a medical question on which the opinion of the fire department's 1-B medical board is conclusive unless arbitrary or capricious. After many examinations and consultations, the medical board came to the conclusion that petitioner was not permanently disabled stating: "It is the opinion of the 1-B Medical Board that he is temporarily disabled by virtue of his refusal to accept proper medical treatment and we do not consider him permanently disabled at this time." This is not the same as an order to petitioner to undergo surgery. But in determining whether petitioner is permanently disabled, the medical board has a right to consider whether proper medical treatment (including surgery) is reasonably and safely available to correct the disability, and if it is, the board has the right to consider the disability a temporary one. We have been informed that after the determination by the medical board here sought to be reviewed, the medical board at a later date found petitioner to be permanently disabled but apparently not as a result of line of duty, and that the board of trustees of the pension fund has deferred action on petitioner's case pending determination of this appeal. The record now before us is not addressed to these events, and our determination is without prejudice to any future CPLR article 78 proceeding based on events after the filing of the petition herein. Concur — Birns, J. P., Sullivan, Markewich and Silverman, JJ.

Lupiano, J., dissents in a memorandum as follows: Petitioner, a member of the New York City Fire Department since March 6, 1970, sustained an injury to his left knee on September 7, 1977, while in the course of this employment. The injury, a broken fibula bone and torn medial meniscus, resulted in petitioner's being placed on medical leave and being found unfit for fire duty on October 28, 1977. In consequence, the fire commissioner applied on petitioner's behalf for a medical disability pension and the matter was referred to the article 1-B medical board. Petitioner's private orthopedist notified the fire department on October 14, 1977, that petitioner "has an internal derangement of the left knee which requires surgery. The patient does not want the surgery at the present

time." On December 8, 1977, the medical board (composed of three doctors) considered the application for a medical disability pension in petitioner's case. The board split 2 to 1 in rendering its determination, the majority being of the opinion that petitioner should be examined by the board's orthopedic consultant, Dr. Doherty, "for his opinion regarding whether or not with reasonable medical certainty this Fireman can be returned to full fire duty following definitive surgery." The minority view was that petitioner could not be returned "with reasonable medical certainty to full fire duty following definitive surgery." Accordingly, the medical board deferred final determination pending receipt of Dr. Doherty's consultation. Dr. Doherty, after his examination of petitioner on January 11, 1978, reported to the medical board that "Review of the * * * history of pain and instability with the episodes of locking of the knee, combined with the positive physical findings of loss of full extension and positive MacMurray test and in view of the positive arthrogram, there is little doubt that the patient has a tear of the medial meniscus. Under these conditions, he is presently incapacitated to perform the full duties of a fire fighter. Under *ordinary* circumstances, it would be reasonable to assume that a patient undergoing a *routine* arthrotomy of the knee with excision of the medial meniscus followed by a well-planned and conscientously-followed rehabilitation program, could return to ordinary activity. Whether or not the conditions under which firemen operate on certain occasions would * * * exceed those limits * * * [results in] some element of doubt as to his ability to return to full fire duty following arthrotomy" (emphasis supplied). On March 9, 1978, the medical board again considered the petitioner's case with the report of Dr. Doherty and again deferred final determination in a 2 to 1 split vote. The majority concluded that Dr. Doherty's expressed doubt about the petitioner's ability to return to full duty, even with the surgical operation, was not justified, and that petitioner should be seen by another orthopedic consultant, Dr. Jaffe, "to evaluate whether or not he can with reasonable medical certainty be restored to full fire duty by proper treatment." The minority opinion was that petitioner had "a permanent partial disability that cannot be corrected with reasonable medical certainty by any definitive surgical procedure." On March 31, 1978, petitioner was examined by Dr. Jaffe, who reported: "I would recommend arthroscopy under general anesthesia to visualize the lateral component as well as to reconfirm the tear of the medial meniscus. At the conclusion of the arthroscopy I would then perform a medial arthrotomy and menisectomy * * * In order for arthrotomy and medial menisectomy to be performed and *if no further pathology is found* in either the lateral or medial component, I think it is reasonable to expect a 36 year old to be rehabilitated to the point of returning even to the strenuous * * * requirements of a fireman first grade" (emphasis supplied). Subsequently, when the medical board for the third time considered petitioner's case, petitioner submitted a report from his private physician, Dr. Gelmann, which unequivocally declared that the arthrogram performed on petitioner on October 5, 1977, shortly after the injury was sustained, "confirmed the clinical impression of an *extensive tear* of the medial * * * cartilage of the left knee" and that "This condition appears to be a permanent one" (emphasis supplied). The medical board adopted the report of Dr. Jaffe, viewing it as declaring in clear terms that "with proper treatment this member would have an excellent chance of returning to full duty status if he accepted the treatment." Accordingly, the board unanimously concluded that petitioner was not permanently, but temporarily disabled because he would not accept proper medical treatment, and denied the fire commissioner's application on petitioner's behalf for medical disability retirement. Petitioner's subsequent CPLR article 78 proceeding, seeking judicial review of this administrative determination, resulted in an order by Special Term directing a trial on the issue of whether petitioner's refusal to submit to surgery warranted denial of

the application for disability retirement pension. Trial Term granted leave to either party to move for reargument before Special Term on the ground that a preliminary issue as to whether, as a matter of law, the petitioner can be compelled to submit to the recommended surgery, be determined or clarified. Petitioner so moved for reargument, which motion was granted, Special Term determining to remand the matter back to the respondents for a determination not inconsistent with its new decision dated March 29, 1979. In that decision, the court concluded that the medical board and the pension fund trustees have no power "to require petitioner to submit to an operation to rehabilitate his impairment or, as a corollary, to require him to do so as a condition precedent to classify him as permanently disabled." Special Term viewed the situation as one in which there was no authority accorded respondents to consider an employee's refusal or failure to seek recommended rehabilitative surgery in determining whether or not to allow an applicaton for retirement on permanent disability. This appeal by respondents followed. The petition in this CPLR article 78 proceeding refers only to the determination by the medical board and not to any determination by the board of trustees. Even though Special Term in its memorandum decision dated March 29, 1979, which underlies the order and judgment appealed from herein, describes the proceeding as one wherein petitioner seeks a judgment reviewing and annulling the determinations of the medical board and the board of trustees, there is no determination by the latter set forth in or unequivocally referred to by the record. The report and certification by the medical board is advisory, the board of trustees having the ultimate responsibility in determining whether to grant or deny the application for medical disability retirement (see *Matter of Meschino v Lowery,* 34 AD2d 255). Accordingly, if the article 78 proceeding brought by petitioner be deemed one in the nature of certiorari to review, it is premature and should have been dismissed. Respondents, however, did not move to dismiss the petition for this reason. Parenthetically, it is noted that the haste with which petitioner brought the article 78 proceeding was necessitated by the fact that the chief medical officer directed the petitioner back to full duty immediately upon that officer's receipt of the medical board's certification and report, although the matter was still to be resolved by the board of trustees. The anomaly presented by this situation is self-evident. The failure of respondents to move to dismiss the petition on the ground that the proceeding is premature is apparently founded on the novel issue sought by the petitioner to be brought before the court. The petitioner views this issue as whether the statute (Administrative Code of City of New York, §§ B19-7.54 through B19-7.97) authorizes the medical board to deny a disability pension because the otherwise permanent disability is subject in the board's opinion to rehabilitative surgery. Respondents view the issue as follows: may the medical board in determining whether a member's disability is permanent consider whether the disability is subject to standard medical treatment, which with a reasonable degree of medical certainty may be said to result in the member's being restored to full service? Under these circumstances, and recognizing the novel and grave import of the issue sought to be raised, we regard the article 78 proceeding herein as being in the nature of prohibition rather than the certiorari or mandamus (see the perceptive analysis regarding the distinctions and niceties of the different article 78 proceedings set forth in Siegel, New York Practice, pp 776-789). It suffices to state that the requirement of finality is not applicable to prohibition and the instant article 78 proceeding is not subject to dismissal as premature in this context. Respondents in their brief on appeal inform this court that dispite the statutory stay imposed by CPLR 5519 (subd [a], par 1) the medical board on October 11, 1979 reconsidered the petitioner's case and concluded that his condition had progressively deteriorated to the point that it is impossible to state with reasonable

medical certainty that petitioner would benefit from surgical intervention. The change in prognosis resulting in a finding of permanent disability was attributed to petitioner's willful neglect. The board of trustees has deferred action on the petitioner's case pending determination of this appeal. Assuming the action by the medical board on October 11, 1979 has rendered the appeal academic pending appeal, we would nevertheless refrain from dismissing it because of the importance of the issues presented. These issues affect the administration of the New York City Fire Department Pension Fund and will arise again and again. They invite immediate decision (see *Matter of Rosenbluth v Finkelstein,* 300 NY 402, 404; *Matter of Glenram Wine & Liq. Corp. v O'Connell,* 295 NY 336, 340; *Matter of Turel v Delaney,* 285 NY 16; see, also, Cohen and Karger, Powers of the New York Court of Appeals [rev ed], § 99). The issue is perceived by this court not to be whether respondents have the authority to compel petitioner to undergo medical treatment, but whether the medical board may consider the nature of the medical treatment required to correct the disability and the nature of petitioner's refusal to undergo such treatment in determining whether the disability is permanent. The answer is yes. In *Papas v Equitable Life Assur. Soc. of U. S.* (265 App Div 128), the appellate court was confronted by a plaintiff suing under the disability provisions of an insurance policy providing for monthly payments to the insured on proof that he was totally and permanently disabled. Plaintiff predicated his claim on the fact that he was suffering from diabetes, but he refused at all times to avail himself of insulin therapy. The defendant insurance carrier argued that this refusal precluded recovery, whereas plaintiff contended that as the policy did not require him to submit to medical treatment as a prerequisite to recovery, the disability engendered by his diabetic condition qualified as a permanent disability despite any benefit which might be derived from insulin. The Second Department, noting that the burden was on plaintiff to prove that his disability was permanent, declared (p 129): "A * * * disability is not permanent if, during the period for which recovery is sought, or at any time thereafter, the insured may alleviate or control it by availing himself of a *standard form of treatment, not inherently dangerous*" (emphasis supplied). The analogy of this case to the matter presented on this appeal is evident. It is clearly within the general intendment of chapter B19 of the Administrative Code that the medical board, in considering the question whether a particular disability is permanent, be empowered not only to examine into the nature of the disability, but also to determine whether it is within the power of the party suffering the disability to alleviate or control the disability by availing himself of a standard form of treatment not inherently dangerous, and whether the refusal to so avail oneself is under all the circumstances reasonable. This conslusion flows from the fact that the law was enacted as a matter of public policy, in the exercise of the police power, to protect firemen (cf. *Cook v City of Binghamton,* 48 NY2d 323). Firemen permanently disabled as the result of injury incurred in the performance of their official duties are provided with a lifetime pension in recognition of and appreciation for the fact that the disability was suffered in the performance of duty. The danger posed by Special Term's view is that medical disability retirement would be granted to those who unreasonably refuse standard medical treatment which is not inherently dangerous with respect to a disability which, assuming such treatment was availed of, would be alleviated or cured. Under such circumstances the disability may justifiably be viewed as temporary. The contrary view would clearly encourage abuse and might well permit a fireman disabled by a minor injury to obtain a medical disability pension simply by leaving such injury untreated. Study of the memorandum for the list leads me to conclude that there is no disagreement between my position and that of the majority up to this point. The difference in our views is that the majority do not treat the

issue of whether petitioner's refusal to undergo treatment was reasonable and deem the medical evidence before the medical board to be compelling. Apart from consideration of the nature of the disability and whether there exists a suitable standard medical treatment which is not inherently dangerous to alleviate or cure the disability, the question remains as to whether the refusal to undergo such treatment is reasonable. For example, in *Montgomery v Board of Retirement of Kern County Employees' Retirement Assn.* (33 Cal App 3d 447) the court viewed the applicant's refusal to undergo surgery which presented no unusual hazards, predicated on her sincerely held religious beliefs as reasonable. It was accordingly concluded that the applicant was permanently disabled and entitled to disability retirement benefits. Support for our conclusion that the medical board in determining whether a disability is permanent may consider the availability of standard medical treatment which is not inherently dangerous and the reasonableness of the disabled party's refusal to undergo such treatment, may be gleaned from decisions in the related area of workers' compensation (see, e.g., *Palloni v Brooklyn-Manhattan Tr. Corp.*, 215 App Div 634; *Matter of Peasley v Wendling Iron Works*, 277 App Div 622; cf. *Matter of Kalevas v Williams & Co.*, 27 AD2d 22). It is clear, on this record, however, that *the medical board did not give due consideration to whether petitioner's refusal to undergo surgical treatment was, under the circumstances, reasonable.* To reiterate, the record does not unequivocally demonstrate that petitioner's own doctors opined with a reasonable degree of medical certainty that petitioner should avail himself of surgery in which event he would be fully expected to recover from his disability to the extent of being returned to full duty. The medical board on its first two considerations of the application for medical disability was split, one of the three doctors on the panel being of the opinion that petitioner could not be expected with a reasonable degree of medical certainty to return to full duty after the corrective surgery. Further, the first independent orthopedic specialist to whom the medical board sent petitioner was of a similar opinion as the minority member of the board. It was only after a further opinion was obtained by the medical board from a second orthopedic specialist selected by it, to wit, a Dr. Jaffe, that the board unanimously determined to deny the application for medical disability retirement. Study of Dr. Jaffe's report to the medical board discloses an implicit realization that petitioner's condition was dynamic and subject to degenerative changes. Dr. Jaffe, based upon his examination, did not unequivocally state to the board that petitioner was one who subjecting himself to proper medical treatment could be deemed as being able to return to full duty with a reasonable degree of medical certainty. In essence Dr. Jaffe proposed further exploratory surgery to examine the then present extent of petitioner's disability, and assuming the condition to have remained stable during the intervening period from the first medical examination shortly after the accident, he could state with a reasonable degree of medical certainty that standard noninherently dangerous corrective surgery would result in petitioner's being restored to full duty. The divergence of the various medical opinions in this matter renders the issue of the reasonableness of petitioner's refusal to undergo corrective surgery most acute. In this connection note is taken of petitioner's assertion in Paragraph No. 19 of his petition[*] that "the rate of discharge for firemen, as known and proven by the very statistics of the 1B Medical Board, *after* such operation, is over 80%." This allegation is denied by respondents in their answer. Thus, it must be concluded that Special Term was correct in its determination to grant the petition to the

---

[*] Nominated as "Affidavit in Support of Petition For Article 78" in the record.

extent of remanding this matter back to the respondents for further consideration, albeit it did so for the wrong reasons. Nowhere in the record is it shown that the medical board explicitly considered and determined the issue of the reasonableness of petitioner's refusal to undergo the proper medical treatment. In view of the interrelation of the issue with that of whether it may be stated that if petitioner subjected himself to proper noninherently dangerous medical treatment, he may with a reasonable degree of medical certainty be viewed as being able to return to full duty, we direct that the remand be for *de novo* consideration of the application for medical disability retirement. The order and judgment (one paper) of the Supreme Court, New York County, entered May 19, 1979, should be modified to the extent of directing that the matter be remanded to respondents for a determination not inconsistent with the reasons stated above, and, as so modified, should be affirmed, without costs and disbursements.