In the Matter of CHARLES M. HULSE, Petitioner, v THOMAS P. DiNAPOLI, as State Comptroller, Respondent. [895 NYS2d 249]—

Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner's applications for accidental disability and performance of duty retirement benefits.

While responding to an emergency call in 2001, petitioner, a 20-year police officer with the Town of Ramapo Police Department, injured his back lifting a large person in order to perform CPR. He was treated for a herniated lumbar disc, was out of work for one month and then returned to full duty as a police officer. In September 2003, while participating in a training program for bike patrol police officers in which the instructor was teaching a technique for avoiding injury when falling off a bicycle, petitioner completed the technique four times but injured his right shoulder on the fifth attempt. According to petitioner, the injury occurred when, experiencing pain in his lower back when performing the "fall" as directed, he intentionally tried to land on his upper back in order to favor his lower back and instead landed on his right shoulder. An X ray revealed a shoulder separation, requiring physical therapy. Petitioner was unable to return to full duty due to right shoulder pain when performing tasks required in police work, and returned part time in a light duty capacity in February 2004, retiring in September 2006.

Petitioner's applications for accidental disability retirement benefits and performance of duty retirement benefits were initially denied. After a hearing, a Hearing Officer upheld the

denials and respondent adopted those findings. Petitioner then commenced this CPLR article 78 proceeding.

We confirm. While petitioner now concedes that his 2001 back injury was not the result of an accident, he contends that his 2003 shoulder injury constitutes an accident entitling him to accidental disability retirement benefits. However, under firmly established principles, an accident in this context is limited to a " 'sudden, fortuitous mischance [which is] unexpected [and] out of the ordinary' " (*Matter of Felix v New York State Comptroller*, 28 AD3d 993, 994 [2006] [citation omitted], quoting *Arthur A. Johnson Corp. v Indemnity Ins. Co. of N. Am.*, 6 AD2d 97, 100 [1958], *affd* 7 NY2d 222 [1959]; *see Matter of Kenny v DiNapoli*, 11 NY3d 873, 874 [2008]). Excluded, thus, are incidents "where the injury results from an expected or foreseeable event arising during the performance of routine employment duties" (*Matter of Marsala v New York State & Local Employees' Retirement Sys.*, 14 AD3d 984, 985 [2005] [citation omitted], *lv denied* 4 NY3d 709 [2005]; *see Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II*, 57 NY2d 1010, 1012 [1982]; *Matter of McKenna v Hevesi*, 26 AD3d 584, 585 [2006]). At the time of his shoulder injury, petitioner was participating in a bicycle training exercise that constituted an ordinary part of his police officer duties and involved the normal risks related thereto, and the manner in which he was injured—practicing a technique to safely fall off a bicycle—was not unexpected or unforeseeable (*see Matter of Felix v New York State Comptroller*, 28 AD3d at 994; *Matter of McKenna v Hevesi*, 26 AD3d at 585; *Matter of Marsala v New York State & Local Employees' Retirement Sys.*, 14 AD3d at 985). As substantial evidence supports the determination denying petitioner's accidental disability benefits, it will not be disturbed (*see Matter of Magrino v DiNapoli*, 64 AD3d 868, 869 [2009]).

Turning to petitioner's application for performance of duty retirement benefits for both injuries, respondent determined that he failed to meet his burden of showing that he was permanently incapacitated for the performance of his duties (*see* Retirement and Social Security Law § 363-c [b] [1]). Petitioner relied solely upon his medical records, including those of his treating physician (Louis Starace) for both injuries (from 2003 to 2007), who concluded that his prognosis was "poor" for a full recovery from his separated shoulder injury, and that it rendered him permanently disabled from performing all of the duties of his police officer position. Petitioner also submitted medical records from several other treating physicians indicating his symptoms, courses of treatment and inability to work in full-

duty capacity at various points due to his shoulder or back injury, but none documented that he was permanently disabled as a result of either injury.

The New York State and Local Employees' Retirement System presented the testimony and report of John Mazella, a board-certified orthopedic surgeon who examined petitioner and reviewed petitioner's medical records in November 2005 at their request. Mazella concluded that petitioner had no disability attributable to his back injury, which he diagnosed as "lumbar strain/sprain without radiculopathy [radiating pain]." While he determined that the shoulder injury resulted in a mild range of motion limitation and strength reduction and would be permanently disabling without surgery,* he concluded that petitioner was not permanently incapacitated because he could undergo a reasonably safe surgical procedure (a Mumford distal clavicle resection). He did not believe that petitioner's chronic Lyme disease, contracted in 1996, would inhibit his full recovery given his successful recovery from two prior unrelated surgeries while he suffered from that disease. Although the outcome of the surgery could not be predicted with any certainty (and it could worsen his condition), Mazella opined that there was a "high" likelihood that it would relieve his pain and allow him to restore full function to his shoulder. Petitioner testified that he is unwilling to undergo that surgery due to the risks and possible complications. He stated that his treating doctor advised him that his chances of success are "50/50," but this is not documented in his medical records.

Respondent has exclusive "authority to resolve conflicts in medical opinion and to credit the testimony of one expert over that of another" (*Matter of Schine v Hevesi*, 40 AD3d 1362, 1363 [2007] [citation omitted]; *see Matter of Capparella v McCall*, 7 AD3d 875, 876 [2004]). As Mazella's medical opinion was rationally based upon an examination of petitioner and his medical records, substantial evidence supports respondent's determination that petitioner failed to establish that he was permanently incapacitated because a reasonably safe surgical procedure exists that could resolve his shoulder disability, despite evidence in the record that might support a contrary result (*see Matter of Mullins v New York State Comptroller*, 49 AD3d 951, 952 [2008]; *Matter of Quigley v Hevesi*, 48 AD3d 1023, 1025 [2008]; *Matter of Beckley v New York State & Local Retirement Sys.*, 43 AD3d 1267, 1268-1269 [2007]; *Matter of Schine v Hevesi*, 40 AD3d at 1363-1364).

---

* In an independent medical examiner report in 2004, a different orthopedic surgeon opined that petitioner had a "mild partial disability" to his shoulder.

Mercure, J.P., Malone Jr., Stein and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.