■ In the Matter of JAMES C. WILKINSON, Petitioner, v THOMAS P. DiNAPOLI, as Comptroller of the State of New York, Respondent. [927 NYS2d 463]—

Stein, J.

Petitioner, a police officer, sustained an injury to his left shoulder in a motor vehicle accident in April 2002. Petitioner thereafter reinjured his left shoulder when he was involved in a physical altercation while investigating a stabbing in September 2003. In August 2004, petitioner had applications for accidental disability and performance of duty disability retirement benefits filed on his behalf, alleging that he was permanently incapacitated from performing his work-related duties as the result of the injuries suffered in the two incidents. The applications were disapproved on the grounds that the April 2002 accident did not occur during the course of petitioner's duties and that petitioner had not established that he was permanently incapacitated from performing his duties. Petitioner requested a rehearing and redetermination,[1] after which the Hearing Officer determined that petitioner was permanently incapacitated due to the injuries suffered in the September 2003 incident and granted the applications for accidental disability and performance of duty disability retirement benefits. On review, respondent reversed, finding that petitioner had not established that he was permanently disabled from performing his duties, and both applications were denied, prompting this CPLR article 78 proceeding.

We confirm. "As an applicant for accidental and performance of duty disability retirement benefits, petitioner bore the burden of prov[ing] that he [is] permanently incapacitated from performing his job duties" (*Matter of Girsh v DiNapoli*, 79 AD3d 1444, 1444 [2010] [internal quotation marks and citation omitted]). To that end, petitioner submitted the medical reports of Gary Fink, his treating physician. In February 2004, Fink noted that physical therapy had not resolved petitioner's symptoms and requested authorization for shoulder surgery. No surgery was performed and, in June 2004, Fink opined that, although petitioner was capable of light duty, he had "basically reached an endpoint in terms of his overall status" and that his "current symptom complex will probably persist on a permanent basis." Petitioner further relied on a medical report from John Mazella, an orthopedic surgeon who examined petitioner and reviewed certain of his medical records on behalf of the New York State and Local Retirement System. In a report dated February 3, 2005, Mazella opined that petitioner was permanently disabled from performing his job duties with no reasonably safe surgical treatment available to correct his condition.

In contrast, the Retirement System presented a supplemental

---

**1.** Petitioner elected to rely solely on medical records without live testimony.

report prepared by Mazella in December 2006, in which he changed his earlier opinion and concluded that petitioner "is not permanently disabled, since an arthroscopic, generous, subacromial decompression is a reasonably safe surgical treatment, which would correct [petitioner's] disabling left shoulder condition." This change of opinion was based on Mazella's review of certain of petitioner's medical records that he had not reviewed in forming his original opinion. These records included, among other things, the report of Lawrence Foster, who performed an independent medical examination of petitioner in February 2004. Foster concluded that petitioner has not reached maximum medical improvement for his injuries and that surgery on his left shoulder would be appropriate. Similarly, Thomas Danyliw, who examined petitioner in January 2004, recommended that petitioner undergo decompression surgery and opined that petitioner was not at "full disability at this time."

"Where, as here, there is conflicting medical evidence, respondent is vested with the exclusive authority to weigh such evidence and credit the opinion of one medical expert over another" (*Matter of Gatewood v DiNapoli*, 60 AD3d 1266, 1267 [2009] [citation omitted]; *accord Matter of Landgrebe v DiNapoli*, 77 AD3d 1047, 1048 [2010]). Here, both Foster and Danyliw recommended surgery to alleviate petitioner's condition and Mazella ultimately concluded that the surgical procedure recommended was safe and would correct petitioner's disability.[2] Accordingly, substantial evidence supports respondent's determination that petitioner failed to establish that he was permanently disabled because a safe surgical procedure exists that could alleviate his disability (*see Matter of Hulse v DiNapoli*, 70 AD3d 1235, 1237 [2010]; *Matter of Mullins v New York State Comptroller*, 49 AD3d 951, 952 [2008]).

We reject petitioner's contention that the Hearing Officer erred in admitting Mazella's supplemental report into evidence, over his objection, without providing an opportunity to cross-examine him. Although the Retirement System presented testimony from Mazella regarding such report, it subsequently moved to have the supplemental report received into evidence and agreed to have his testimony stricken. Notably, Mazella's brief testimony was nothing more than a recitation of the contents of his reports and there was no indication that either

---

**2.** The Retirement System also presented the report of orthopedic surgeon Mary Godesky. Godesky noted that petitioner had declined having the recommended surgery due to a lack of guaranteed success. Godesky also concluded that petitioner was not permanently disabled from performing his duties.

the Hearing Officer or respondent relied upon such testimony in rendering their determinations. In choosing the option to rely solely on medical records without live testimony, petitioner consented to the inclusion in the hearing record of expert report(s) presented by the Retirement System, based upon the expert's examination of petitioner's medical records. Therefore, petitioner waived any objection to the admission of Mazella's supplemental report (*see Matter of Cuttino v New York State Comptroller*, 80 AD3d 1067, 1068 [2011]). Under these circumstances, we conclude that due process did not require an opportunity to cross-examine Mazella. Petitioner's remaining contentions are either academic or not properly before us.

Mercure, J.P., Peters, Malone Jr. and Kavanagh, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.