*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: February 9, 2017                523251
_____

In the Matter of CHARLES
    CALIFANO,
                    Petitioner,

            v                              MEMORANDUM AND JUDGMENT

THOMAS P. DiNAPOLI, as State
    Comptroller, et al.,
                    Respondents.
_____

Calendar Date: January 10, 2017

Before: Garry, J.P., Rose, Devine, Clark and Mulvey, JJ.

_____

    Sherman Federman Sambur & McIntyre, LLP, Bay Shore (Sean
Patrick Riordan of counsel), for petitioner.

    Eric T. Schneiderman, Attorney General, Albany (William E.
Storrs of counsel), for respondents.

_____

Mulvey, J.

    Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Albany County) to
review a determination of respondent Comptroller denying
petitioner's request for performance of duty disability
retirement benefits.

    Petitioner, a correction officer, applied for performance
of duty disability retirement benefits (see Retirement and Social
Security Law § 607-c) alleging that he was permanently
incapacitated due to work-related injuries to his neck, back and
right wrist sustained as a result of acts of inmates in March
2007 and March 2011. The application for benefits was initially

denied upon the ground that he was not permanently incapacitated from performing his duties as a correction officer. Petitioner requested a hearing and redetermination and, following a hearing, a Hearing Officer upheld the denial of the application.[1] Respondent Comptroller accepted the findings and conclusions of the Hearing Officer, and this CPLR article 78 proceeding ensued.

We confirm. "In connection with any application for accidental or performance of duty disability retirement benefits, the applicant bears the burden of proving that he or she is permanently incapacitated from the performance of his or her job duties" (Matter of Del Peschio v DiNapoli, 139 AD3d 1298, 1299 [2016] [internal quotation marks and citations omitted]; see Matter of Anderson v DiNapoli, 126 AD3d 1278, 1278 [2015]; Matter of Occhino v DiNapoli, 117 AD3d 1156, 1156 [2014]). "In determining whether a person is permanently disabled, [the Comptroller] may consider whether proper medical treatment is reasonably and safely available to correct the disability" (Matter of Dingee v DiNapoli, 56 AD3d 876, 877 [2008] [citation omitted]; see Matter of Cepeda v New York State Comptroller, 115 AD3d 1146, 1147 [2014], lv denied 23 NY3d 906 [2014]), and petitioner bears the burden of justifying refusal to consent to such treatment (see Matter of Quigley v Hevesi, 48 AD3d 1023, 1025 [2008]; Matter of Beckley v New York State & Local Retirement Sys., 43 AD3d 1267, 1268 [2007]).

At the hearing, petitioner submitted the medical reports of various treating physicians, in which they opined that petitioner was disabled and unable to perform the duties of the position of correction officer at the time of their examination. Mitchell Goldstein, petitioner's private orthopedist, reported that petitioner continued to have neck and back pain as a result of cervical and lumbar herniated discs with cervical radiculopathy, lumbar radiculopathy and lumbar stenosis and that, as a result of

---

[1] At the hearing, respondent New York State and Local Retirement System conceded that the incidents of March 2007 and March 2011 both constituted an act of an inmate and caused petitioner's injuries for purposes of petitioner's application for performance of duty disability retirement benefits.

petitioner's pain, limited range of motion and difficulty with activity of daily living, petitioner was totally and permanently disabled from performing his duties as a correction officer. Without expressing any view as to permanency, neurologists Ahmed Elfiky and Igor Stiller examined petitioner and each reported, consistent with the findings in Goldstein's report, that petitioner was totally disabled at the time of examination as a result of his injuries and unable to perform his duties as a correction officer. Stuart Kandel, an orthopedic surgeon who conducted an orthopedic evaluation of petitioner, also reported that petitioner was not capable of performing his duties as a correction officer; however, Kandel opined that petitioner had not yet reached the maximum medical improvement. Paul Brisson, an orthopedic surgeon specializing in spinal surgery, examined petitioner and also concluded that petitioner's injuries to his cervical and lumbar spine were "very symptomatic" and that, because his injuries had not "resolved over time with proper medication or conservative treatment," petitioner was totally disabled and could not resume his work as a correction officer. Brisson also reported, however, that petitioner "may benefit from an anterior and posterior lumbar fusion [surgery] of L4-5 and L5-S1."

In contrast, respondent New York State and Local Retirement System presented medical reports and testimony from John Killian, an orthopedic surgeon who reviewed petitioner's medical records and examined petitioner in June 2012 and June 2013. Following his initial examination of petitioner, Killian reported, among other things, that petitioner presented with no atrophy, asymmetry, deformity or muscle spasm of the cervical spine and, due to inconsistencies between imaging studies and petitioner's reported and observed pathology, that petitioner was "exhibiting symptom magnification for motivational purposes." Killian further reported that, given petitioner's exaggerated subjective complaints and age, it is "much too early to establish permanent disability." In his June 2013 addendum report prepared after reviewing additional medical documentation, Killian noted that there was no indication that petitioner followed up with a spinal surgeon or considered having surgery to decompress and stabilize his lower back. Killian expressed that petitioner exhibits a "potential for improvement" and that he is therefore not

permanently disabled from resuming his duties as a correction officer.

Relative to the possibility of corrective surgery, Killian testified that, notwithstanding petitioner's testimony describing his apprehension of corrective procedures, a bi-level fusion surgical procedure was available and suggested to petitioner that the procedure was a reasonable option with a significant likelihood of improvement that would allow petitioner to return to work at a normal capacity. Killian also opined that there is a "good chance" that, even without the surgery, petitioner would eventually recover and be able to resume working. Inasmuch as the Comptroller is vested with the authority to weigh conflicting medical evidence and credit the reports and testimony of Killian over the medical reports submitted by petitioner (see Matter of Aliperti v DiNapoli, 138 AD3d 1378, 1379 [2016]; Matter of Wilkinson v DiNapoli, 86 AD3d 851, 853 [2011]), we find that substantial evidence in the record supports the determination that petitioner's condition is not permanent and that he did not overcome his burden to demonstrate that he has exhausted reasonable remedial procedures available to him (see Matter of Borsilli v DiNapoli, 140 AD3d 1575, 1576 [2016]; Matter of Hulse v DiNapoli, 70 AD3d 1235, 1237 [2010]; Matter of Dingee v DiNapoli, 56 AD3d at 877; Matter of Quigley v Hevesi, 48 AD3d at 1025). We therefore discern no basis to disturb the determination denying petitioner's application for performance of duty disability retirement benefits. Finally, we have considered petitioner's remaining contentions and find them to be without merit.

Garry, J.P., Rose, Devine and Clark, JJ., concur.

ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

ENTER:

*Robert D Mayberger*

Robert D. Mayberger
Clerk of the Court