Matter of Corbin v DiNapoli (2020 NY Slip Op 02523)





Matter of Corbin v DiNapoli


2020 NY Slip Op 02523


Decided on April 30, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 30, 2020

529686

[*1]In the Matter of Ronald Corbin, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, et al., Respondents.

Calendar Date: March 26, 2020

Before: Garry, P.J., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Lippes Mathias Wexler Friedman LLP, Albany (Thomas D. Latin of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondents.



Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's applications for disability retirement benefits.
Petitioner, a correction officer, was involved in the takedown of an inmate in February 2013, as the result of which petitioner sustained what he alleged was his second on-the-job concussion. Although petitioner initially returned to work, he apparently was medically terminated from his position by the Department of Corrections and Community Supervision and thereafter applied for disability retirement benefits pursuant to Retirement and Social Security Law §§ 507-a and 507-b. Both applications were denied upon the ground that petitioner was not permanently incapacitated from the performance of his duties as a correction officer. Following a hearing and redetermination, at which the testimony and reports of various medical professional were received into evidence, a Hearing Officer upheld the denials — finding that petitioner had not met his burden of establishing that he was permanently incapacitated from the performance of his duties. Respondent Comptroller adopted the Hearing Officer's findings and conclusions, prompting petitioner to commence this CPLR article 78 proceeding to challenge the Comptroller's determination.
At the hearing, respondent New York State and Local Employees' Retirement System conceded that the February 2013 incident constituted the act of an inmate; therefore, the issues distilled to whether petitioner was permanently incapacitated from the performance of his duties as a correction officer (see Retirement and Social Security Law § 507-a) and, if so, whether such incapacitation was the natural and proximate result of the February 2013 incident (see Retirement and Social Security Law § 507-b). As the applicant, petitioner bore the burden of proof in this regard (see Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [2019]; Matter of Ellrodt v DiNapoli, 169 AD3d 1128, 1128-1129 [2019]; Matter of Keitel v DiNapoli, 154 AD3d 1047, 1048 [2017]), and the Comptroller was free to weigh the conflicting medical proof submitted by the parties and to credit one expert's opinion over that of another (see Matter of McGowan v DiNapoli, 178 AD3d 1243, 1243 [2019]; Matter of Selke v New York State Comptroller, 176 AD3d 1295, 1296 [2019]; Matter of Donley v DiNapoli, 153 AD3d 1104, 1105 [2017]). If, upon our review of the record, the Comptroller's determination is supported by substantial evidence, it will not be disturbed (see Matter of Walsh v New York State & Local Empls. Retirement Sys., 176 AD3d 1431, 1432 [2019]; Matter of Echevarria v DiNapoli, 170 AD3d 1412, 1413 [2019]).
Preliminarily, petitioner's claim that the Hearing Officer and, by extension, the Comptroller failed to consider the record as a whole in denying petitioner's applications for benefits is unpersuasive. Although the Hearing Officer's written decision does not reference the reports prepared by the two neurologists who previously conducted independent medical examinations of petitioner, those reports were received into evidence as exhibits, as was petitioner's voluminous medical record, and the Hearing Officer's decision reflects that it was based upon his review of the hearing minutes, the hearing exhibits and the parties' closing briefs, the latter of which also referenced and discussed the findings made by the independent medical examiners. Under these circumstances, we are satisfied that the determination was based upon a review of the entire record — notwithstanding the lack of specific references to petitioner's medical record and/or certain reports.
As to the testimonial evidence, petitioner's treating psychologist — Ronald Robbins — diagnosed petitioner with panic disorder with agoraphobia, generalized anxiety disorder, posttraumatic stress disorder and anxiety, characterized petitioner's prognosis as "guarded" and opined that petitioner was permanently disabled from the performance of his duties as a result of both the concussion that petitioner sustained in February 2013 and the psychiatric effects that flowed therefrom. Although Robbins was of the view that petitioner's psychiatric symptoms, including his panic attacks and flashbacks, were the result of postconcussive "changes in the chemistry of [petitioner's] brain," Robbins conceded that he was unaware of any scientific evidence to support that opinion, agreed that such physical changes in the brain could perhaps only be seen upon autopsy and, significantly, admitted that he had not discussed the physical effects of petitioner's concussion with any of petitioner's treating physicians, including any neurologists. Robbins further acknowledged that petitioner's psychiatric symptoms could have presented even in the absence of a concussion and that such symptoms were amenable to treatment with medication or other forms of therapy. Nevertheless, Robbins insisted that petitioner was permanently disabled as a result of his work-related concussion.
Jeffrey Newton, the psychiatrist who examined petitioner on behalf of the Retirement System, disputed each of the diagnoses made by Robbins, explained why petitioner did not, in his opinion, meet the criteria for panic disorder with agoraphobia, generalized anxiety disorder, posttraumatic stress disorder and anxiety and, instead, diagnosed petitioner as suffering from an adjustment disorder with anxious mood, i.e., a higher than normal level of anxiety associated with a particular situation. According to Newton, petitioner's anxiety was treatable and, as such, did not permanently incapacitate petitioner from performing his duties as a correction officer.
Robbins and Newton offered conflicting testimony regarding the source of petitioner's psychiatric symptoms, the degree to which those symptoms were amenable to treatment and whether such symptoms prevented petitioner from returning to work as a correction officer, thereby presenting factual and credibility issues for the Hearing Officer and the Comptroller to resolve (see e.g. Matter of Beatty v McCall, 3 AD3d 714, 715 [2004]; Matter of Kaiser v McCall, 1 AD3d 756, 758 [2003]). Additionally, the record demonstrates that, with respect to petitioner's psychiatric symptoms, further reasonable treatment was available (see Matter of Solarino v DiNapoli, 171 AD3d at 1435; Matter of Buckley v DiNapoli, 166 AD3d 1265, 1267 [2018]). As to the physical effects of petitioner's work-related concussion, we agree with the Comptroller that petitioner did not otherwise meet his burden of establishing by competent medical proof that he was permanently incapacitated from the performance of his duties as a result of the February 2013 incident (see e.g. Matter of Walsh v New York State & Local Empls. Retirement Sys., 176 AD3d at 1432). As the Comptroller's determination is supported by substantial evidence, it will not be disturbed.
Garry, P.J., Clark, Aarons and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.