Matter of Diesel v DiNapoli (2020 NY Slip Op 03712)





Matter of Diesel v DiNapoli


2020 NY Slip Op 03712


Decided on July 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 2, 2020

529916

[*1]In the Matter of Dennis J. Diesel, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date: June 8, 2020

Before: Egan Jr., J.P., Lynch, Clark, Pritzker and Reynolds Fitzgerald, JJ.


Law Firm of Alex Dell, PLLC, Albany (Nicholas A. Fusco of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondent.



Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for World Trade Center accidental disability retirement benefits.
In the wake of the September 2001 terrorist attacks, petitioner, a state trooper, was dispatched to the World Trade Center site to, among other things, assist the National Transportation Safety Board in attempting to locate the airplanes' black boxes. Petitioner continued to work at or near ground zero on an intermittent basis until early 2002. In 2014, petitioner was diagnosed with "severe obstructive sleep apnea with desaturation" and, following an unrelated on-duty injury, filed an application for World Trade Center accidental disability retirement benefits — alleging that he was permanently incapacitated from the performance of his duties as the result of, among other conditions, sleep apnea. The New York State and Local Police and Fire Retirement System denied petitioner's application upon the ground that he was not permanently incapacitated from the performance of his duties. Following a hearing and redetermination, a Hearing Officer agreed and upheld the denial of petitioner's application for benefits. Respondent thereafter adopted the Hearing Officer's findings and conclusions, prompting petitioner to commence this CPLR article 78 proceeding to challenge respondent's determination.
As the applicant, petitioner bore the burden of demonstrating that he was permanently incapacitated from the performance of his duties as a state trooper (see Matter of Buckley v DiNapoli, 166 AD3d 1265, 1267 [2018]; Matter of McGarry v DiNapoli, 153 AD3d 1109, 1109 [2017]; Matter of London v DiNapoli, 153 AD3d 1106, 1107 [2017]). "In assessing whether permanent incapacity has been shown, respondent may consider whether proper medical treatment is reasonably and safely available to correct [petitioner's] disability" (Matter of London v DiNapoli, 153 AD3d at 1107 [internal quotation marks and citations omitted]; see Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [2019]; Matter of Buckley v DiNapoli, 166 AD3d at 1267), and petitioner, in turn, "bears the burden of justifying [any] refusal to consent to such treatment" (Matter of London v DiNapoli, 153 AD3d at 1107 [internal quotation marks and citations omitted]).
Petitioner testified that he developed various problems after working at the World Trade Center site, including nightmares and difficulties breathing and sleeping; the disruption in his sleep caused him to fall asleep at work, which, in turn, impeded his ability to respond to calls for service. Although petitioner was given a CPAP machine to treat his sleep apnea, he testified that he could not tolerate the machine for more than one hour at a time, as having the mask on his face triggered flashbacks. According to petitioner, he consulted with two physicians and was advised that he was not a candidate for corrective surgery to treat his sleep apnea. Although certain of petitioner's medical records were received into evidence, none of his treating physicians testified, and petitioner did not call a medical expert to testify upon his behalf — opting instead to rely upon the evaluation conducted by Carl Friedman, the physician who examined petitioner on behalf of the Retirement System. Notably, the results of petitioner's 2014 sleep study were neither entered into evidence nor made available to Friedman, and petitioner did not offer any specifics regarding his use of the CPAP machine, including the type of machine prescribed, the extent of the training provided, the length of time that he attempted to use the CPAP machine without success and whether any follow-up or corrective actions were undertaken.
Following his examination of petitioner in January 2016, Friedman issued a report, wherein he acknowledged that petitioner had been diagnosed with severe obstructive sleep apnea and indicated that, absent successful treatment, such condition, which Friedman deemed to be permanent, prevented petitioner from performing the duties of a state trooper.[FN1] At the request of the Retirement System, Friedman issued an addendum to his report in September 2016, wherein he opined that petitioner's sleep apnea was causally related to his work at the World Trade Center site. Friedman further clarified that if petitioner could tolerate the CPAP machine and remain compliant therewith, "he may be able to return to his duties."
As petitioner points out, Friedman's subsequent hearing testimony indeed reflects that he had misgivings regarding petitioner's potential to successfully use the CPAP machine to treat his sleep apnea; Friedman acknowledged that some individuals simply cannot tolerate the machine and suggested that petitioner's lack of success in utilizing this device in the past did not necessarily bode well for future endeavors. Friedman also testified, however, that there were different types of CPAP machines available and that, with proper training and support, as well as the information gleaned from a titration study to determine how much positive airway pressure is required to vent the airway obstruction, a patient usually will comply with the treatment. As noted previously, petitioner did not provide Friedman with any details or records regarding his attempt to use the CPAP machine initially prescribed for him, and Friedman saw no evidence that a titration study had been performed upon petitioner. Absent such information, Friedman was left with only petitioner's self-serving representation that he tried to use the CPAP machine to treat his sleep apnea and failed. Similarly, Friedman was presented with only petitioner's otherwise unsubstantiated statement that he was not a candidate for any corrective surgical or dental procedures, as Friedman was not provided with any reports prepared by the evaluating physicians. Given these deficiencies in petitioner's proof, respondent's finding that petitioner failed to prove that he was permanently incapacitated from the performance of his duties is supported by substantial evidence in the record as a whole — particularly in view of the lack of medical evidence demonstrating that petitioner had in fact exhausted his treatment options (see e.g. Matter of Solarino v DiNapoli, 171 AD3d at 1437; Matter of McGarry v DiNapoli, 153 AD3d at 1110). In light of this conclusion, we need not address the remaining argument raised by petitioner upon review.
Egan Jr., J.P., Lynch, Clark and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: In reaching that conclusion, Friedman noted that a CPAP titration evaluation apparently was not performed and that petitioner had not been compliant in his use of the CPAP machine. Friedman also suggested that petitioner explore surgical options.