Matter of Agard v Gardner (2025 NY Slip Op 01855)

Matter of Agard v Gardner

2025 NY Slip Op 01855

Decided on March 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 27, 2025

CV-24-1299
[*1]In the Matter of Richardeen Agard, Petitioner,
v
Colleen C. Gardner, as Executive Deputy Comptroller, Respondent.

Calendar Date:February 19, 2025

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and Ceresia, JJ.

Paul Kalker, Esq., PC, Hauppauge (Paul Kalker of counsel), for petitioner.
Letitia James, Attorney General, Buffalo (Sarah L. Rosenbluth of counsel), for respondent.

Egan Jr., J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for disability retirement benefits.
In October 2017, petitioner, a bank examiner for the Department of Financial Services, where she worked since 2001, applied for disability retirement benefits pursuant to Retirement and Social Security Law § 605 (c) due to her medical condition of essential hypertension. The application was denied on the ground that she was not permanently incapacitated from the performance of her job duties. Following a hearing that spanned 2019 through 2023, at which conflicting medical evidence and opinions were offered, her application was denied on the basis that she had not met her burden of proving permanent incapacitation from the performance of her duties. Upon review, respondent upheld and adopted that determination. Petitioner then commenced this CPLR article 78 proceeding.
We confirm. To be entitled to disability retirement benefits, as relevant here, petitioner had the burden of proving that she is "physically . . . incapacitated for the performance of gainful employment, and that [s]he was so incapacitated at the time [that] [s]he ceased h[er] performance of duties and ought to be retired for disability" (Retirement and Social Security Law § 605 [c]; see Matter of Habaibeh v DiNapoli, 223 AD3d 1074, 1075 [3d Dept 2024]). The sole issue at the hearing was whether she was permanently incapacitated from performing her duties.
At the hearing, petitioner testified to her 40-year history of labile (volatile) hypertension, which she asserted was not under control or controllable, its medical side effects and symptoms and her hospitalizations, medications and courses of treatment. She recounted that she had experienced a flare up of very high blood pressure in March 2017, which required hospitalization and cardiac stent surgery, and that she ceased working in May 2018. Petitioner submitted medical records and the December 2017 statement from her primary care physician accompanying her disability application, which checked boxes indicating that she was then permanently incapacitated from the performance of her job duties and that treatment was not expected to substantially improve her function and employability; the form classified her prognosis as "stable" and placed her functional capacity at class 2, reflecting a slight limitation. Petitioner did not call any medical witnesses or submit any medical reports. The New York State and Local Employees' Retirement System relied on the opinion and testimony of Stuart Stauber, an internal medicine physician who conducted an independent medical examination of petitioner in July 2018 and issued an initial report in which he concluded that she was, at that time, permanently incapacitated, an opinion on which petitioner relied. However, after reviewing her job description and additional medical [*2]records subsequent to her initial exam, Stauber issued an addendum in March 2019 and May 2021 (after petitioner testified) revising that opinion and concluding that she is not permanently disabled as a result of her diagnosis of labile hypertension. He recommended intensifying her dosage of hypertension medication and noted that her job description was sedentary in nature and that she was able to perform her duties as a bank examiner. He confirmed his opinion when he subsequently testified, indicating that her diagnoses, as relevant here, were "labile hypertension—poorly controlled" and "coronary artery disease status
post[ ] . . . stent placement." Stauber testified that essential hypertension is high blood pressure with no known cause which, if it goes out of control, is called labile hypertension until it is brought under control. He explained that his 2018 assessment that petitioner was permanently incapacitated was a temporary assessment based upon her then-uncontrolled labile hypertension, but that subsequent medical records did not reflect ongoing labile hypertension, leading him to revise his opinion and conclude that she was not permanently incapacitated.
In finding that petitioner had not demonstrated that she was permanently incapacitated, the Hearing Officer and respondent declined to credit Stauber's explanation that he revised his initial opinion based upon a review of her job description, finding that he had been aware of her job from the outset. Nonetheless, the Hearing Officer and respondent credited Stauber's ultimate conclusion that she was not permanently incapacitated, finding that she had not met her burden of showing permanent incapacity, noting that the medical records contain support for Stauber's opinion that her hypertension might be controlled if she were to increase her medication, as she was advised to do in October 2017; they further credited Stauber's opinion that her hypertension could be controlled if she were compliant with her medication regime, and that her medical records reflected that she had not been consistently compliant in taking prescribed medications.
"Where, as here, there is conflicting medical evidence, respondent is vested with the exclusive authority to weigh such evidence" (Matter of Habaibeh v DiNapoli, 223 AD3d at 1076 [internal quotation marks and citations omitted]; see Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [3d Dept 2019]), and that "determination will be sustained if supported by substantial evidence" (Matter of DeFazio v DiNapoli, 211 AD3d 1254, 1255 [3d Dept 2022] [internal quotation marks and citation omitted]). Moreover, "[i]n determining whether a person is permanently disabled, respondent may consider whether proper medical treatment is reasonably and safely available to correct the disability" (Matter of McGarry v DiNapoli, 153 AD3d 1109, 1110 [3d Dept 2017] [internal quotation marks and citation omitted]; see Matter of Diesel v DiNapoli, 185 AD3d 1135, 1136 [3d Dept 2020[*3]]; Matter of Mondello v Beekman, 78 AD2d 824, 824 [1st Dept 1980], affd 56 NY2d 513 [1982]; see also Matter of Corbin v DiNapoli, 182 AD3d 974, 976-977 [3d Dept 2020]). Given that the uncontradicted medical opinion credited and adopted by respondent was based upon a physical examination and review of relevant medical records, the determination that petitioner failed to meet her burden of proof of establishing that she was permanently incapacitated from her job duties is supported by substantial evidence and will not be disturbed.
Aarons, Pritzker, Lynch and Ceresia, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.