Matter of Cuppek v DiNapoli (2025 NY Slip Op 02632)

Matter of Cuppek v DiNapoli

2025 NY Slip Op 02632

Decided on May 1, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 1, 2025

CV-23-2112
[*1]In the Matter of Stephen Cuppek, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:March 27, 2025

Before:Garry, P.J., Egan Jr., Reynolds Fitzgerald, McShan and Mackey, JJ.

Schwab & Gasparini, PLLC, White Plains (Victor Aqeel of counsel), for petitioner.
Letitia James, Attorney General, Albany (Alexandria Twinem of counsel), for respondent.

McShan, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's applications for accidental and performance of duty disability retirement benefits.
Petitioner, a police officer, filed separate applications for accidental and performance of duty disability retirement benefits alleging that he was permanently incapacitated from the performance of his duties as the result of an October 2015 incident wherein he stumbled while descending stairs in an airport parking structure. The application for accidental disability retirement benefits was denied upon the ground that the October 2015 incident did not constitute an accident within the meaning of Retirement and Social Security Law § 363, and the application for performance of duty disability retirement benefits was denied based upon a finding that petitioner was not permanently incapacitated from the performance of his duties. Following a hearing and redetermination, the Hearing Officer upheld the denials and, upon administrative review, respondent affirmed the Hearing Officer's decision. Petitioner then commenced this CPLR article 78 proceeding to challenge respondent's determination.
With respect to petitioner's application for accidental disability retirement benefits, "petitioner bore the burden of establishing that his disability arose from an accident within the meaning of the Retirement and Social Security Law, and respondent's determination in this regard will be upheld when supported by substantial evidence" (Matter of Walsh v DiNapoli, 214 AD3d 1282, 1282 [3d Dept 2023] [internal quotation marks and citations omitted]; accord Matter of Hamblin v DiNapoli, 229 AD3d 922, 923 [3d Dept 2024]; see Matter of Kubala v New York State & Local Retirement Sys., 220 AD3d 993, 993 [3d Dept 2023]). "For purposes of accidental disability retirement benefits, an accident is defined as a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Hamblin v DiNapoli, 229 AD3d at 923 [internal quotation marks and citations omitted]; see Matter of Bodenmiller v DiNapoli, 43 NY3d 43, 46 [2024]; Matter of Stefanik v Gardner, ___ AD3d ___, ___, 226 NYS3d 641, 645 [3d Dept 2025]). "Notably, a fall as a result of one's own misstep, without more, is not so out-of-the-ordinary or unexpected as to constitute an accidental injury" (Matter of Walsh v DiNapoli, 214 AD3d at 1283 [internal quotation marks and citations omitted]; see Matter of Kelly v DiNapoli, 30 NY3d 674, 683 [2018]; Matter of Stancarone v DiNapoli, 161 AD3d 144, 148 [3d Dept 2018]).
At the time of the October 2015 incident, petitioner was tasked with performing a routine inspection/security check of the airport parking garage. Petitioner testified that, as he was descending the stairs in the garage, he "stepped on some sort of slippery substance" that, in turn, caused his foot to slip off of the stairs[*2]. However, neither petitioner's application for accidental disability retirement benefits, the employer's report of a work-related injury nor any of the contemporaneous reports prepared in connection with this incident make any mention of the alleged slippery substance. Rather, each of these documents — including petitioner's postincident email to his supervisor — consistently indicated that, as petitioner descended the stairs, he "missed a step" and slipped "off the edge" before grabbing the railing to prevent his fall. "It is well settled that any apparent inconsistency between a petitioner's sworn testimony and written documents, including contemporaneous reports, presents a credibility issue for resolution by the finder of fact" (Matter of Kubala v New York State & Local Retirement Sys., 220 AD3d at 994 [internal quotation marks, brackets and citations omitted]; see Matter of Walsh v DiNapoli, 214 AD3d at 1283-1284; Matter of Young v DiNapoli, 208 AD3d 1411, 1412 [3d Dept 2022]). Given the discrepancies between petitioner's account of the incident and the contemporaneous reports, and according deference to respondent's credibility determination, substantial evidence supports the finding that petitioner's injuries arose from his own misstep and, therefore, the underlying incident did not constitute an accident (see Matter of Kubala v New York State & Local Retirement Sys., 220 AD3d at 994-995; Matter of Walsh v DiNapoli, 214 AD3d at 1284; Matter of Young v DiNapoli, 208 AD3d at 1413; Matter of Assmann v DiNapoli, 95 AD3d 1487, 1488 [3d Dept 2012]). Accordingly, petitioner's application for accidental disability retirement benefits was properly denied.
As for petitioner's entitlement to performance of duty disability retirement benefits, the first step in ascertaining whether petitioner is permanently incapacitated is determining the duties against which petitioner's alleged incapacitation should be measured. Where the applicant "has been continuously assigned to light, limited or restricted duties for at least two years prior to the date [the] application for disability retirement benefits was filed with [respondent]," the determination of permanent incapacity is to be based upon "such light, limited or restricted duty assignment" (2 NYCRR 364.3 [b]; see Matter of Lamb v DiNapoli, 128 AD3d 1320, 1320 [3d Dept 2015]; Matter of Keil v New York State Comptroller, 66 AD3d 1317, 1318 [3d Dept 2009]). In the context of the regulation, " 'continuously assigned' . . . does not mean continuous performance and is not interrupted by absence from work while on sick leave" (Matter of Keil v New York State Comptroller, 66 AD3d at 1318; accord Matter of County of Erie v DiNapoli, 180 AD3d 1137, 1138 [3d Dept 2020]; see Matter of Lamb v DiNapoli, 128 AD3d at 1320). Hence, "the dispositive inquiry is whether the [applicant] has been continuously assigned to light-duty work — not . . . whether such [applicant] has in fact continuously performed the light duties [*3]to which he or she was assigned" (Matter of County of Erie v DiNapoli, 180 AD3d at 1138-1139).
Petitioner filed his application for performance of duty disability retirement benefits on February 26, 2018 — resulting in a "look back" period beginning in February 2016. In this regard, the employer tendered a letter indicating that from December 2015 through July 2018, petitioner worked in various light-duty assignments. Specifically, the letter reflects that petitioner worked in the communications unit from December 2015 until January 2016 and again from May 2016 until January 2017.[FN1] Petitioner then performed "general administrative work" at the police academy from January 2017 until July 2017, was engaged in similar work in the pistol licensing unit from July 2017 until October 2017 and performed "admin-only duties" in the property control unit from April 2018 through July 2018.[FN2] The Hearing Officer and respondent credited this documentary evidence over petitioner's contrary and somewhat imprecise testimony regarding the work assigned to him at various points in time and concluded that petitioner's incapacity should be measured against the light-duty standard. As noted previously, "[c]redibility determinations, as well as the resolution of any inconsistencies between the hearing testimony and documentary evidence, are matters for the Hearing Officer and respondent to resolve" (Matter of Walsh v DiNapoli, 214 AD3d at 1283-1284), and as we are satisfied that substantial evidence supports the finding that petitioner was continuously assigned light-duty work during the relevant time period, petitioner's incapacity is properly measured against the light-duty standard (see Matter of Hannon v DiNapoli, 226 AD3d 1122, 1123 [3d Dept 2024]).
"In assessing whether permanent incapacity has been shown, respondent may consider whether proper medical treatment is reasonably and safely available to correct petitioner's disability, and petitioner, in turn, bears the burden of justifying any refusal to consent to such treatment" (Matter of Diesel v DiNapoli, 185 AD3d 1135, 1136 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [3d Dept 2019]; Matter of McGarry v DiNapoli, 153 AD3d 1109, 1109-1110 [3d Dept 2017]). Petitioner acknowledged that the neurosurgeon with whom he consulted recommended a two-level spinal fusion to address the alleged instability in his lumbar spine but indicated that he was reluctant to proceed with the surgery — citing the neurosurgeon's inability to "guarantee" a good result and the unfavorable outcome allegedly experienced by a friend who underwent a similar procedure. Petitioner further testified that his pain management specialist agreed that he should undergo the recommended surgery, and such specialist acknowledged that spinal procedures are generally recognized as safe.
As for petitioner's prognosis, the pain management specialist testified that petitioner [*4]had effectively exhausted nonsurgical treatment options and acknowledged that, assuming the proposed surgery was successful, petitioner would at least be able to perform light-duty work. The orthopedic surgeon who evaluated petitioner on behalf of the New York State & Local Retirement System similarly testified that the proposed two-level surgical fusion was a reasonably safe treatment, that the risk of a significant complication was small and that, with a good result, petitioner would be able to perform the light duties described in the employer's letter.[FN3] In light of such testimony, substantial evidence supports the finding that there is a reasonably safe procedure that could alleviate petitioner's condition. Accordingly, absent justification for petitioner's refusal to consent to the procedure, his application for performance of duty disability retirement benefits was properly denied (see Matter of McGarry v DiNapoli, 153 AD3d at 1110; Matter of Jackson v DiNapoli, 87 AD3d 1258, 1259 [3d Dept 2011]; Matter of Wilkinson v DiNapoli, 86 AD3d 851, 853 [3d Dept 2011]). Petitioner's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Reynolds Fitzgerald and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: The parties do not directly address the period from January 2016 to May 2016, but it appears that petitioner was out of work and recovering from shoulder surgery during this time period.

Footnote 2: Petitioner testified that he was on leave from December 11, 2017 until April 15, 2018. Although petitioner also testified that he worked full-duty assignments from October 25, 2017 to December 10, 2017, the employer's records do not reflect that petitioner worked at all during this period, and petitioner's medical records contain conflicting proof on this point — with some notations reflecting that petitioner was either out of work or working a light-duty assignment during this time.

Footnote 3: Although deferring to petitioner's neurosurgeon as to the need for surgery, the evaluating physician testified that he would not have operated on petitioner because his review of petitioner's imaging studies did not reflect any spinal instability requiring surgical intervention. According to the evaluating physician, petitioner should have been able to perform a light-duty assignment without the proposed surgery.